[No. 2400.]

## HUFF v. HARDWICK.

**1. Evidence—Sales—Mingling Proceeds.**

Where defendant sold certain mining claims in which plaintiff was entitled to one-half the proceeds of the sale, together with other claims, the individual property of defendant, all for one gross sum without specifying the selling price of the separate claims, in an action by plaintiff against defendant for his part of the proceeds of sale, it was error to exclude evidence tendered by plaintiff to prove the number of acres included in the claims in which plaintiff was interested and the number

of acres sold, and that the claims were treated in the sale as of equal value per acre, and that the price was calculated upon the total acreage.

**2. Sales—Mingling Proceeds.**

Where defendant sold certain mining claims in which plaintiff was entitled to one-half of the proceeds, together with certain other claims, the individual property of defendant in which plaintiff had no interest, all for one gross sum, if the claims were so combined in the sale as to put it beyond plaintiff's power to show what proportion of the proceeds he was entitled to receive, he was entitled to one-half of the proceeds of the entire sale.

**3. Contracts—Principal and Agent—Commission—Statute of Frauds.**

Where plaintiff, at the request of defendant, procured for him certain mining claims which plaintiff first took title to in his own name and then conveyed them to defendant with an agreement that when the claims were sold plaintiff was to receive one-half of the proceeds as his compensation, the agreement to pay plaintiff one-half the proceeds of sale was not such contract as is required by the statute of frauds to be in writing.

*Appeal from the District Court of El Paso County.*

Mr. T. J. BLACK, for appellant.

Mr. J. W. ADY and Mr. J. W. SHEAFOR, for appellee.

THOMSON, P. J.

According to the evidence, in November, 1895, the appellee employed the appellant to negotiate, in appellee's behalf, an exchange of certain mining stocks belonging to the appellant, for the interest of one Fletcher in the Blackbird, Bonanza, Kiowa and Carbonate Placer mining claims, in Cripple Creek mining district, Colorado. The appellant accordingly proceeded to execute the commission with which he was intrusted, and succeeded in effecting the exchange, taking the titles to the several claims in his own name. After having so acquired title, he reported what he had done to the appellee. At the

time appellant was employed there was no agreement as to his compensation for his services; but when he had concluded his work and made his report, it was agreed between the parties that the appellant should handle the Blackbird and Bonanza, and the appellee the Kiowa and Carbonate Placer; and that the appellant should give the appellee one-half of what he realized from the former claims, and the appellee should give the appellant one-half of what he realized from the two latter. The appellant thereupon conveyed the Kiowa and Carbonate Placer to the appellee. The appellant soon afterwards sold the Blackbird for a certain sum in money and a number of shares of mining stock. He gave appellee one-half of the money, and offered him one-half of the stock, but he declined to receive it, saying he had plenty of that kind of stock. The appellee then conveyed the interests he had received from the appellant, together with his individual interest in three other claims, to the Montreal Gold Mining Company, in consideration of the issuance to him of 501,000 shares of the capital stock of that company, and afterwards sold this stock for $28,000. He refused to account to the appellant for any portion of the money.

The appellant brought this suit to recover the share of the money to which he was, as he alleged, entitled by virtue of his agreement with the appellee. When the plaintiff had concluded his evidence, on motion of the defendant, judgment of nonsuit was rendered against him.

The foregoing statement of facts is derived from the evidence introduced by the plaintiff, which was the only evidence introduced, and which the motion for a nonsuit admitted to be true. It was shown that in the transaction between the defendant and the mining company the interests conveyed were not separately valued, but that they were taken by the com-

pany at a gross sum for the whole. The plaintiff
sought to prove that the claims were treated as of
equal value per acre, and that the amount of stock
allowed for them was calculated upon the total acre-
age; and then undertook to show what the total acre-
age was, and what was the acreage of the claims in
the proceeds of which he was interested. All the evi-
dence so offered was, on objection by the defendant,
excluded, except as to the acreage of the Carbonate
Placer. In so ruling, the court erred. If it be true
that the property was received by the company at
the same valuation per acre, then proof of the total
acreage, and of the acreage of the claims out of the
proceeds of which plaintiff was to be paid, would
render the amount to which he was entitled a simple
matter of computation; and we know of no other
method by which such amount could be ascertained.

We infer, however, that in the opinion of counsel
the plaintiff could not have made the proof he at-
tempted. They say that he not only did not show,
but could not show, what he was entitled to receive;
and, from his supposed inabilty to make the necessary
proof, they argue that there could be no recovery in
his favor. We have never so understood the law.
The plaintiff had no part in the transaction between
the defendant and the mining company; and if, in
the sale to the company, the defendant so combined
his individual property with the claims respecting
which he owed a duty to the plaintiff, as to put it
beyond the power of the latter to show what pro-
portion of the whole consideration should be credited
to those claims, then, as between the two, on the prin-
ciple applicable in the case of a willful confusion of
goods, the share to which the agreement entitled the
plaintiff would extend to the entire amount received,
and one-half of it would belong to him. The law is
well settled that where one so intermixes his own

chattels with those of another, without the latter's consent, as to render a just division impossible, the party responsible for the mixture must bear the whole loss.—*Robinson v. Holt*, 39 N. H. 557; *Jenkins v. Steanka*, 19 Wis. *126; *Beach v. Schmultz*, 20 Ill. 186; *Graham v. Plate*, 40 Cal. 593; *Hawkins v. Spokane Hydraulic Mining Co.*, 3 Idaho 650.

In *Graham v. Plate*, the defendant manufactured pistols bearing the trade-mark of the plaintiff's intestate, without any authority to use the trade-mark, and it was held that because it was impossible to determine how much of the profits from the sale of the articles resulted from their intrinsic value, and how much from the credit given them by the trade-mark, the owner of the trade-mark should have the whole. In *Hawkins v. Spokane Hydraulic Mining Company*, the corporation worked a mining claim, in which it had a minority interest, against the protest of the representative of the majority interest, and, without the consent of the other party, mingled with the gold taken from that claim, gold extracted from its own claim, the amount of which was undeterminable; and it was held that it was entitled to nothing on account of the gold taken from its own claim.

Another point made is that the agreement between the plaintiff and the defendant was within the statute of frauds, and, therefore, not enforcible. Counsel seem to suppose that the intention of that agreement (which was not in writing) was to vest in the plaintiff an interest in real estate. But it had no such purpose. The plaintiff, at the request of the defendant, procured for the latter the title to certain real estate, taking such title at first in his own name, and afterwards conveying it to the defendant. Having performed this service for the defendant, the agreement was that he should receive as his compensation, not an interest in the ground, but one-

half of the proceeds of the property when it should
be sold by the defendant.   The agreement of the
defendant was simply to pay the plaintiff for his
services, instead of a fixed sum, an amount depend-
ent on what should be realized from the property.
We are not referred to any provision of the statute
of frauds, and we know of none, which renders void
a parol agreement to pay for services performed,
whether the amount to be paid be agreed upon at
the time, or made contingent on something to occur
in the future.

 The judgment is reversed.          *Reversed.*