**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1890-19

LESTER SLABY, LLC,

     Plaintiff-Appellant,

v.

NORTHEAST CONSTRUCTION,
LLC, d/b/a NORTHEAST
CONSTRUCTION &
DEVELOPMENT, LLC;
NORTHEAST CONSTRUCTION
& DEVELOPMENT, LLC;
DARYL[1] MONTICELLO, I/T/A
NORTHEAST CONSTRUCTION
& DEVELOPMENT; OCEAN
ROAD REALTY, LLC,

     Defendants-Respondents.

_____

Submitted March 10, 2021 – Decided April 13, 2021

Before Judges Whipple, Rose and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. DC-013644-18.

---

[1] We note in the record provided the spelling of defendant's first name is Darryl.

Kathleen R. Wall, attorney for appellant.

The Beekman Law Firm, LLC, attorneys for respondents (Christopher Beekman, on the brief).

PER CURIAM

Plaintiff, Lester Slaby, LLC, appeals from the July 1, 2019 dismissal of its complaint and December 4, 2019 denial of its motion for reconsideration. We reverse.

The facts and history of this case are drawn from the record. Plaintiff and its principal, Lester Slaby (Slaby), provide masonry and External Insulation Finishing System (EIFS or stucco) services. Plaintiff, as a subcontractor, provided stucco services to Northeast Construction and Development, LLC (Northeast) in Spring 2018. Defendant, Darryl Monticello, is the president of Northeast and asked plaintiff to install stucco on a car wash, which Monticello confirmed via a May 22, 2018 email: "Lester, below is my contact info, please send insurance certs and I9 to this address. The car wash address is 600 Ocean Ave, Point Pleasant, NJ."

After plaintiff began applying the stucco in May 2018, Northeast sent plaintiff a deposit of $12,000. The project took five or six weeks, in total. The undisputed square footage of the area that needed stucco was 3,925. However, plaintiff and Northeast disagree over whether their agreement was for $5.50 per

2

square foot or $6.50 per square foot and whether Northeast's preference for a type of "square groove" in the stucco work, costing an extra $1,500, was included in the per-square-foot price or would be billed separately. No written agreement was ever offered or signed by the parties.

Based on the additional $1,500 for the square groove style and $6.50 per square foot, when Slaby completed the project, plaintiff sent Northeast an invoice. The June 20, 2018 bill was for $15,012.50, reflecting "installation of EIFS system 3,925 square feet x $6.50 = $25,512.50" and "extra labor for square groove $1,500." This invoice totaled $27,012.50, not including a reduction for the $12,000 deposit on June 15, 2018. Monticello disputed the bill because he thought the $1,500 square groove finish was included in the square foot pricing, and he thought the service would cost $5.50 per square foot.

After mailing the invoice, plaintiff sent a text message asking Monticello for payment, to which Monticello replied plaintiff was "pissing him off" as they were "working on getting [plaintiff] a payment." Monticello sent plaintiff a check for $9,850, which was $262.50 more than the $9,587.50 cost of 3,925 square feet at $5.50 per square foot, or $21,587.50, less the $12,000 deposit.

Next, plaintiff returned the check to Northeast and filed a seven-count complaint that not only asserted contract claims, but also asserted claims under

3

other quasi-contract theories discussed herein. Northeast counterclaimed for costs and attorney's fees. Plaintiff also filed a construction lien.

On July 1, 2019, the trial court dismissed plaintiff's complaint and Northeast's counterclaim, finding no written or signed contract existed. Plaintiff moved for reconsideration or alternatively for a new trial, asking the court to consider its arguments under quasi-contract theories, either unjust enrichment or quantum meruit. The court denied plaintiff's motion on December 4, 2019. This appeal followed.

"The interpretation of a contract is subject to de novo review by an appellate court. Accordingly, we pay no special deference to the trial court's interpretation and look at the contract with fresh eyes." Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011) (internal citations and footnote omitted); see Lobiondo v. O'Callaghan, 357 N.J. Super. 488, 494-95 (App. Div. 2003) (applying a de novo standard of review in deciding whether to enforce an oral contract). Plaintiff first argues Monticello's email functioned as acceptance of plaintiff's offer to perform the work for $6.50 per square foot, plus the $1,500 for a square groove. Plaintiff asserts Monticello did not state $5.50 in his email, but rather, memorialized an oral agreement at $6.50.

An oral contract requires a meeting of the minds, offer and acceptance, consideration, and sufficiently defined terms. Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992). An alleged contract is unenforceable if the parties do not agree on an essential term, or if the essential term is not described with sufficient specificity to allow the performance of the parties to "be ascertained with reasonable certainty." Ibid. (quoting West Caldwell v. Caldwell, 26 N.J. 9, 24-25 (1958); Friedman v. Tappan Dev. Corp., 22 N.J. 523, 531 (1956); Leitner v. Braen, 51 N.J. Super. 31, 38-39 (App. Div. 1958)). Vagueness is only fatal where "the contract [is] so vague or indefinite that it [can]not realistically be enforced." Satellite Entm't Ctr., Inc. v. Keaton, 347 N.J. Super. 268, 277 (App. Div. 2002); (citing Weichert, 128 N.J. at 435 (failure to include essential terms prevents recognition of parties' obligations); West Caldwell, 26 N.J. at 24-25 (intent of parties could not be determined from vague terms)).

"[T]he mere anticipation of a written memorialization of an oral agreement does not as a matter of law vitiate an oral contract if the elements of a contract are contained in the oral agreement." McBarron v. Kipling Woods, L.L.C., 365 N.J. Super. 114, 116 (App. Div. 2004). Parties may contract orally and be bound by that agreement, but the plaintiff must show that the parties agreed upon all the terms, and if so, whether they intended an obligation to arise

only on the execution of a formal writing. <u>Trs. of First Presbyterian Church in Newark v. Howard Co. Jewelers</u>, 22 N.J. Super. 494, 502 (App. Div. 1952); <u>see also</u> <u>McBarron</u>, 365 N.J. Super. at 116-17 ("Plaintiffs correctly point out that the mere anticipation of a written memorialization of an oral agreement does not as a matter of law vitiate an oral contract if the elements of a contract are contained in the oral agreement."). Whether an oral agreement was intended not to bind the parties until a written contract was executed is a matter of intent determined in large part by a credibility evaluation of witnesses. <u>McBarron</u>, 365 N.J. Super. at 117.

Here, Slaby admitted he does not write out contracts. The court noted there was insufficient evidence to support a claim for $6.50 per square foot and there was no meeting of the minds to support a contract. As such, there was no mutual assent to support the claim of $6.50. <u>See</u> <u>Newfield Fire Co. No. 1 v. Borough of Newfield</u>, 439 N.J. Super. 202 (App. Div. 2015) (holding a contract requires a meeting of the minds and mutual assent).

However, when the court issued its order dismissing the complaint and denying reconsideration the judge erroneously overlooked the additional counts of the complaint and arguments made for a new trial. In reality, this left plaintiff without payment, except for the original $12,000 deposit. Even at the lowest

A-1890-19

amount the contract could have been for, $21,587.50, less the $12,000 deposit,

plaintiff was owed, at a minimum, $9,587.50, as the court recognized:

> THE COURT: What I'm asking, I'm not asking anything. I'm asking what is the disagreement if . . . it doesn't seem like there's a disagreement about the [$]9,000 and what?
>
> PLAINTIFF'S COUNSEL: [$]850 [sic].
>
> THE COURT: That's at [$]5.50, right?
>
> DEFENSE COUNSEL: That's at [$]5.50, correct, Your honor.
>
> THE COURT: All right. So[,] if he was going to pay that, why doesn't he just pay it?
>
> DEFENSE COUNSEL: Well, Your Honor, because the order dismissed the complaint.

First, as a theory plaintiff argued in its complaint and motion, quantum

meruit is a method of recovery fashioned to provide plaintiff with "as much

[payment] as [it] deserves." Kopin v. Orange Prods., Inc., 297 N.J. Super. 353,

367 (App. Div. 1997) (quoting La Mantia v. Durst, 234 N.J. Super. 534, 537

(App. Div. 1989)). This theory calls for payment of "just and reasonable

compensation" when one performs services for another at that person's request,

but without any agreement or understanding as to wages or remuneration. Ibid.

(quoting Conklin v. Kruger, 79 N.J.L. 326, 328 (Sup. Ct. 1910)). To be

7

successful on a quantum meruit claim, "the plaintiff must assert: the performance of services in good faith; the acceptance for those services by the entity to which they were rendered; an expectation of compensation therefor; and the reasonable value of the services." Id. at 367-68 (quoting Lehrer McGovern Bouis, Inc. v. N.Y. Yankees, 615 N.Y.S.2d 31 (N.Y. App. Div. 1994)).

Thus, here, the court was to consider whether: (1) plaintiff applied the stucco in good faith; (2) defendants accepted plaintiff's stucco work, by way of the tendered payment; (3) compensation was expected, notably given plaintiff's invoice; and (4) the reasonable value of the services, which is to be determined on remand. N.J. Land Title Assoc. v. Rone, 458 N.J. Super. 120, 132 (2019) (internal citations omitted); see EnviroFinance Grp., LLC v. Env't Barrier Co. LLC, 440 N.J. Super. 325, 349 (App. Div. 2015) (confirming the four-part Weichert test).

Based on our review of the record, plaintiff clearly satisfied the first three necessary tests. And the reasonable value of the services was, at a minimum, $9,587.50. It is undisputed plaintiff performed the stucco work to completion, and Monticello's email dispatching plaintiff shows acceptance of the services, regardless of the price. An expectation of compensation is per se present, given

the invoice and prior discussions of compensation, although they are unable to define the amount. However, only the value of the services is disputed.

We briefly note this is a case where a separate and distinct quasi-contract theory is present, unjust enrichment, as plaintiff argued in its motion for a new trial. "To recover on the theory of quasi-contract the plaintiffs must prove that defendant was enriched, viz., received a benefit, and that retention of the benefit without payment therefor would be unjust." Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 109 (App. Div. 1966). Because of this argument's posture on appeal, we also find the facts from the record indicate a "miscarriage of justice." Borough of Saddle River v. 66 E. Allendale, LLC, 424 N.J. Super. 516, 526 (App. Div. 2012). To be sure, Northeast was not left on the proverbial hook for the job. In fact, Monticello waited to be paid for this work, by the owner of the car wash, before Northeast tendered a check to plaintiff. For this reason, it would be a miscarriage of justice to allow defendants to retain the $9,850 they were planning to pay plaintiff, which it had received from its customer.

Therefore, under these facts, we are constrained to reverse and remand to the trial court to find, at a bare minimum, plaintiff is owed $9,850 and to conduct a hearing on whether plaintiff can establish a higher reasonable value for the

A-1890-19

services under its quantum meruit theory. Reversed and remanded, consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1890-19